COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges AtLee, Friedman and Frucci
Argued by videoconference

LISHA BRYANT-SHANNON

MEMORANDUM OPINION* BY
v.       Record No. 0180-24-1           JUDGE RICHARD Y. ATLEE, JR.
                                         JUNE 10, 2025
TINA L. VICK

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
William R. Savage, III, Judge Designate

Chester Smith (Smith Law Group, PLLC, on briefs), for appellant.

Christina M. Heischmidt (Matthew W. Lee; Young E. (Evelyn) Ko;
Wilson, Elser, Moskowitz, Edelman & Dicker LLP on brief), for
appellee.


In this appeal, we consider whether the circuit court erred by dismissing Lisha

Bryant-Shannon's complaint for defamation against Tina L. Vick. The court concluded that

Vick's allegedly defamatory statement was true and therefore not actionable. The court also

found that Bryant-Shannon failed to adequately plead a basis to recover punitive damages.

Bryant-Shannon challenges both findings. We conclude that Bryant-Shannon successfully pled a

defamation claim against Vick but failed to plead an adequate basis for punitive damages. We

therefore affirm the judgment in part, reverse it in part, and remand the case to the circuit court

for further proceedings consistent with this opinion.

I. BACKGROUND

"Because this appeal arises from the grant of a demurrer, we accept as true all factual

allegations expressly pleaded in the complaint and interpret those allegations in the light most

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). We also accept as true "the facts that are revealed by the exhibits attached to the [complaint], and the facts that reasonably may be inferred from those sources." *Goode v. Burke Town Plaza*, 246 Va. 407, 408 (1993). "But we are not bound by the pleader's conclusions of law that are couched as facts." *Theologis v. Weiler*, 76 Va. App. 596, 600 (2023).

Bryant-Shannon and Vick are former employees of Hampton Roads Community Action Program, Inc. ("HRCAP"), a nonprofit social services organization located in Newport News. Bryant-Shannon worked at "HRCAP for more than 31 years with an unblemished record of achievement, including being named as an employee of the year." She held the position of Deputy Director of the organization from July 2002 until her employment was terminated in February 2016. Vick was Chairman of the Board of Directors of HRCAP (a volunteer position) until July 2015, when she resigned to become the organization's Interim Executive Director.[1] Vick served as the Interim Executive Director from August 2015 to May 2016. She was also a member of the Newport News City Council and the city's Vice Mayor during the relevant events.

Tensions first arose between Vick and Bryant-Shannon in 2012, when Vick's daughter, then an employee of HRCAP, was terminated from her job. Vick had sought assistance from Bryant-Shannon in keeping her daughter employed, and she held Bryant-Shannon partially responsible for her daughter's loss of employment.

Years later, the Executive Director of HRCAP, Wendell Braxton, announced his resignation, effective August 31, 2015. This development further strained the relationship between Bryant-Shannon and Vick because both women hoped to win the newly vacant Executive Director position. The board appointed Vick as "Interim Executive Director" in July

---

[1] The complaint does not specify when Vick began serving on HRCAP's board.

2015, a choice which Bryant-Shannon describes in the complaint as "controversial within HRCAP and the community."[2]

Vick began as the Interim Executive Director in August 2015. On September 14, 2015, Vick convened a meeting with Bryant-Shannon at which she raised a number of alleged disciplinary concerns relating to Bryant-Shannon's behavior. Vick accused Bryant-Shannon of (1) improperly taking vacation-sick leave, (2) improperly exchanging work-related e-mails while on vacation, and (3) being involved in improperly treating salaried employees as hourly employees for purposes of recording annual leave. Vick prepared a disciplinary action form making the same allegations in writing, which she did not sign but placed in Bryant-Shannon's personnel file. Bryant-Shannon denied that she had violated any company policies. At the meeting, Vick also "broached the HRCAP personnel tensions" resulting from her appointment in hopes of quelling discussion of the matter and promoting efficiency within the office.

According to a September 23, 2015 letter from Angela Futrell, then Chair of the Board, to Bryant-Shannon, Bryant-Shannon complained to HRCAP's Office of Human Affairs that she was being made subject to retaliation for voicing concerns about Vick's appointment as Interim Executive Director.[3] Futrell implemented an internal grievance procedure to address Bryant-Shannon's concerns, but the complaint does not state what the result of the procedure

---

[2] Bryant-Shannon alleges HRCAP had a succession plan in place under which Bryant-Shannon, being the Deputy Director, would serve as the "Acting Executive Director" until the HRCAP board settled on a permanent replacement. But Bryant-Shannon also attached as an exhibit to the complaint minutes from a July 17, 2015 Executive Committee meeting which state, with respect to a succession plan, "[m]embers present agreed that the board had worked on such a document but it had never come to fruition." "On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Harless v. Nicely*, 80 Va. App. 678, 682 (2024) (quoting *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 166 n.2 (2022)).

[3] The letter is an exhibit to the complaint.

was. The letter also states that Vick "withdrew" the disciplinary action form after discussing the related issues with Bryant-Shannon.

In November 2015, Bryant-Shannon sued Vick and HRCAP for defamation based on the statements Vick made in the disciplinary action form. HRCAP terminated Bryant-Shannon's employment in February 2016. The complaint does not state the basis for Bryant-Shannon's termination.[4]

On March 2, 2016, Vick repeated to Nancy Null, another HRCAP employee, the same allegations about Bryant-Shannon's behavior that Vick had made in September 2015. During that conversation, Vick told Null, "I will fire your white ass just like I fired [Bryant-Shannon]," and "I want you to think about doing things first against me or you will end up losing your job just like [Bryant-Shannon]."

The board ultimately chose a different candidate to permanently fill the Executive Director position and Vick ceased being Interim Executive Director in May 2016. Bryant-Shannon voluntarily nonsuited her suit against Vick and HRCAP in June 2016.

Bryant-Shannon then applied to the Virginia Employment Commission ("VEC") for unemployment benefits in July 2016. At a VEC hearing, Futrell stated that Bryant-Shannon had filed a $30 million lawsuit against HRCAP and that Bryant-Shannon had stolen HRCAP documents and e-mails, including the minutes of an HRCAP board meeting and Vick's HRCAP time records, by forwarding them to her personal e-mail or to her husband, Andrew Shannon, "without a legitimate need" for the documents. Bryant-Shannon maintains that these allegations were false. The VEC denied Bryant-Shannon's application for unemployment benefits in

---

[4] One exhibit to the complaint includes what appear to be excerpts from a transcript and a brief from an unemployment benefits claim proceeding before the Virginia Employment Commission. Although these exhibits may suggest the basis of Bryant-Shannon's termination from HRCAP, we are not permitted to consider them in this proceeding under Code § 60.2-623(B), as discussed further below.

September 2016.  The complaint does not state the basis of the denial.  Bryant-Shannon appealed the decision but withdrew her appeal in December 2016.

On September 13, 2016, Vick told Michael Edwards, her acquaintance who had been a poll worker for Vick in her campaign for city council, that "[Bryant-]Shannon should have been fired from [HRCAP] because she stole e-mails from [HRCAP]."  (Second and third alterations in original.)  On May 1, 2018, Vick told Edwards (the statement that is the subject of this appeal), "Lisha stole e-mails from [HRCAP] and gave them to Andrew [Shannon], [and] she should have been fired."  (Alterations in original.)

Bryant-Shannon refiled her defamation claims against Vick and HRCAP in separate complaints.  Against HRCAP, she alleged claims based on the allegations of misconduct in Vick's September 2015 disciplinary action form, the republication of those statements during the VEC proceedings, other statements made by Vick, and Futrell's accusations against Bryant-Shannon in the VEC proceedings.  *See Bryant-Shannon v. Hampton Rds. Cmty. Action Program, Inc.*, 299 Va. 579, 583, 589 (2021).

In the operative complaint here against Vick personally, Bryant-Shannon advanced four claims.[5]  Counts I and II assert defamation per se and defamation per quod against Vick for her statements in the disciplinary action form.  Counts III and IV assert defamation per se and defamation per quod against Vick for her September 13, 2016 and May 1, 2018 statements to Edwards.  Bryant-Shannon requested general damages for the defamation per se claims, special damages for the defamation per quod claims, and punitive damages for all four claims.  Bryant-Shannon attached 51 pages of exhibits to the complaint.  The exhibits relevant to the

_____

[5] Vick demurred to Bryant-Shannon's initial complaint and the circuit court sustained it, granting Bryant-Shannon leave to amend.  Bryant-Shannon then filed her "Second Amended Complaint," which is the operative complaint.  For simplicity, we refer to the relevant document in this opinion as the "complaint."

issues on appeal include: the September 2015 disciplinary action form; the September 2015 letter from Angela Futrell; the July 17, 2015 HRCAP Executive Committee meeting minutes; the HRCAP e-mail policy; various e-mails sent to Bryant-Shannon's HRCAP e-mail address, including some that she forwarded to her personal e-mail address; and excerpts from a transcript and a brief that appear to be from Bryant-Shannon's unemployment benefits claim proceedings.

While this case was pending, the circuit court dismissed Bryant-Shannon's case against HRCAP, and the Supreme Court of Virginia affirmed that decision. *Bryant-Shannon*, 299 Va. at 581-92. The Court held that Vick's statements about Bryant-Shannon in the disciplinary action form were not defamatory as a matter of law, as they lacked the requisite defamatory "sting." *Id.* at 587-88. Regarding Futrell's testimony to the VEC, the Court held that those statements could not be the basis of a defamation action because "Code § 60.2-623(B) grants absolute privilege to statements made during VEC proceedings." *Id.* at 591.

Vick demurred to the complaint in the instant case, arguing that the Supreme Court of Virginia's opinion in Bryant-Shannon's case against HRCAP was grounds for dismissing each of Bryant-Shannon's claims against her. Vick also argued that Counts III and IV, to the extent they were based on Vick's September 13, 2016 statement, were barred by the statute of limitations. As to Vick's May 1, 2018 statement, Vick argued it was not "actionable" because it was true, lacked defamatory "sting," and was an opinion. Finally, Vick demurred to Bryant-Shannon's request for punitive damages, arguing that Bryant-Shannon failed to plead that Vick made the statements knowing they were false, or with reckless disregard for their truth.

Vick argued that the May 1, 2018 statement that Bryant-Shannon "stole" e-mails from HRCAP was true because Bryant-Shannon attached several e-mails from her work e-mail address as exhibits to the complaint and did not allege that she was authorized to forward those e-mails to her personal e-mail account or to print them and remove them from HRCAP's

property. According to Vick, attaching those e-mails constituted an admission that Bryant-Shannon took them without permission. Vick also argued that Bryant-Shannon admitted through her counsel at a hearing on the demurrer that she had wrongfully taken the e-mails.[6] According to Vick, Bryant-Shannon's counsel admitted during argument that Bryant-Shannon had lost her job and her subsequent VEC unemployment benefits claim because she wrongfully took papers from HRCAP.

The circuit court sustained the demurrer as to Counts I and II, concluding they were based on statements "determined by [the circuit c]ourt and the Virginia Supreme Court to not be defamatory," and it sustained the demurrer to the portions of Counts III and IV based on Vick's September 13, 2016 statement, finding those claims barred by the statute of limitations. The court also dismissed Bryant-Shannon's requests for punitive damages without explaining the basis for its reasoning.

As for the May 1, 2018 statement, the court concluded that the first half of the statement (that Bryant-Shannon "stole e-mails from [HRCAP]") was true. The court found, "it's clear that she did something with these e-mails that she wasn't supposed to do[,] and she was punished for it. She was fired." The court noted that the VEC "affirmed her firing as having been a proper dismissal." The court also found that Bryant-Shannon appealed the VEC ruling but withdrew her appeal and that doing so "in a way [was] saying, okay, I give up." The court concluded: "I find that there's really no issue for a jury to determine here. She did take these e-mails. She was punished for it." It noted that "[s]he was fired, and that makes it true what was said[,] and truth is an absolute defense." The court further concluded that the second half of the May 1, 2018 statement (that Bryant-Shannon "should have been fired") was an opinion, not a statement of

_____

[6] The circuit court held two hearings on the demurrer, and Vick made this argument in a brief after the first hearing.

fact. Thus, the court concluded that the May 1, 2018 statement was not actionable for purposes of a defamation claim. The court therefore dismissed Counts III and IV with respect to the May 1, 2018 statement. The court did not rule on whether the May 1, 2018 statement had the requisite "sting" to be actionable. Bryant-Shannon now appeals.

## II. ANALYSIS

We review de novo the circuit court's decision to sustain a demurrer. *Theologis*, 76 Va. App. at 603. "The purpose of a demurrer is to determine whether the pleading and any proper attachments state a cause of action upon which relief can be given." *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 467 (2020) (quoting *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (quoting *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017)). Thus, "[a] circuit court 'is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a . . . complaint.'" *Id.* (second alteration in original) (quoting *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors*, 259 Va. 419, 427 (2000)). The sole question is "whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against a defendant." *Pendleton v. Newsome*, 290 Va. 162, 171 (2015).

A. *The May 1, 2018 statement was "actionable."*

To state a claim for defamation, a plaintiff must allege "(1) publication of (2) an actionable statement with (3) the requisite intent" by the defendant. *Schaecher v. Bouffault*, 290 Va. 83, 91 (2015) (quoting *Tharpe v. Saunders*, 285 Va. 476, 480 (2013)). Only the second element—whether the statement is actionable—is at issue here. To be actionable, a statement must be (1) factual,

rather than one of opinion, (2) defamatory, and (3) false. *See id.*; *Handberg v. Goldberg*, 297 Va. 660, 666-68 (2019).

Regarding the first requirement, "statements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false." *Jordan v. Kollman*, 269 Va. 569, 576 (2005). Thus, "for a statement to be actionable as defamation, 'it must "have a provably false factual connotation and thus [be] capable of being proven true or false.""" *Handberg*, 297 Va. at 666 (alteration in original) (quoting *Schaecher*, 290 Va. at 98).

To meet the second requirement—i.e., to be sufficiently defamatory to be actionable—the statement must have "the requisite defamatory 'sting' to one's reputation." *Id.* at 667 (quoting *Schaecher*, 290 Va. at 92). A statement has defamatory "sting" if it "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or . . . tends to hold him up to scorn, ridicule, or contempt, or . . . is calculated to render him infamous, odious, or ridiculous." *Id.* at 668 (quoting *Schaecher*, 290 Va. at 92). Whether it has the requisite "sting" is an issue of law. *Id.* at 667. Our Supreme Court has explained that courts perform a "gatekeeping function" with respect to this element: "[A] court must decide as a threshold matter of law whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to a finder of fact." *Schaecher*, 290 Va. at 94.

The third element requires the plaintiff to show that the allegedly defamatory statement is a "*false* factual statement." *Handberg*, 297 Va. at 666 (emphasis added) (quoting *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46 (2009)). "[T]ruth no longer is an affirmative defense to be established by the defendant" in a defamation action; "[i]nstead, the plaintiff must prove falsity." *Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985). "[T]he determination whether an allegedly defamatory statement is false ordinarily presents a factual question to be resolved by a jury." *Hyland*, 277 Va. at 48. Thus, a court determining at the demurrer stage whether a statement is

actionable as defamation will generally "determine (a) *not 'whether the alleged defamatory statement is true or false*, but whether it is capable of being proved true or false,' and (b) whether it has 'the requisite defamatory "sting" to one's reputation.'" *Handberg*, 297 Va. at 668 (emphasis added) (first quoting *Tharpe*, 285 Va. at 482; then quoting *Schaecher*, 290 Va. at 92). Then, "once a trial judge has determined that an allegedly defamatory statement is capable of being proved false" and has the requisite sting, it is "*the jury's* function . . . to evaluate the evidence presented and to determine whether the plaintiff has met her burden of proving that the allegedly defamatory statement is false." *Hyland*, 277 Va. at 48 (emphasis added). Courts may "award summary judgment to the defendant on the basis that the statement is true," but "*[o]nly if a plaintiff unequivocally has admitted the truth of an allegedly defamatory statement*, including the fair inferences, implications, and insinuations that can be drawn from that statement." *Id.* (emphasis added). Otherwise, whether the statement is true or false is for the jury. *Id.*

1. Bryant-Shannon sufficiently alleged that Vick's statement was false.

Bryant-Shannon first argues that the circuit court improperly decided whether the statement was true, which should have been left to the factfinder. We agree. The complaint sufficiently alleged that Vick's May 1, 2018 statement was false. The statement at issue is: "Lisha stole e-mails from [HRCAP] and gave them to Andrew [Shannon], [and] she should have been fired."[7] (Alterations in original.) Vick argues that Bryant-Shannon "stole" e-mails by sending HRCAP e-mails from her work e-mail address to her personal e-mail address without authorization. But viewed "in the light most favorable" to Bryant-Shannon, the allegations in the complaint do not support that conclusion. *Coward*, 295 Va. at 358.

---

[7] We focus on only the first part of the statement (that Bryant-Shannon stole e-mails and gave them to her husband). The second part of the statement (that Bryant-Shannon should have been fired) is opinion.

- 10 -

Bryant-Shannon flatly denied that she "stole" any e-mails from HRCAP. Additionally, the reasonable inference from the exhibits to the complaint is that Bryant-Shannon either was authorized or believed she was authorized to use her personal e-mail address to handle work matters, at least in certain circumstances. One exhibit, for example, is HRCAP's "E-Mail Policy," which prohibits various actions, such as using HRCAP e-mail and information systems "in any way that may be disruptive, offensive to others, or harmful to morale," but it nowhere states that using a personal e-mail address for work matters or exchanging messages between a work e-mail address and a personal e-mail address is prohibited.

Bryant-Shannon also attached as an exhibit an e-mail exchange from January 2012, in which she forwarded a work e-mail to her personal e-mail address because her work e-mail address was not functioning properly. The exhibit shows Bryant-Shannon unsuccessfully attempting to send a message from her work e-mail, then successfully forwarding the message to the same recipient from her personal e-mail address. The recipient replied to Bryant-Shannon: "Don't tell me you all are having problem[s] with you[r] e-mail at work again?" The implication from these exhibits is that Bryant-Shannon had authority or believed she had the authority to use her personal e-mail address, at least in certain circumstances, such as when her work e-mail failed. Whether Bryant-Shannon actually had that authority is a factual question going to the truth of Vick's statement, properly resolved by a jury, not by the court in a demurrer. *See Hyland*, 277 Va. at 48.

Vick argues that the e-mails attached to the complaint constitute a judicial admission that Bryant-Shannon wrongfully possessed e-mails belonging to HRCAP. But the HRCAP e-mail policy attached to the complaint does not prohibit Bryant-Shannon's use of her personal e-mail address. Vick asks us to assume that Bryant-Shannon's possession of the e-mails was unauthorized, but points to no factual allegation or exhibit that supports that conclusion. Put simply, there *is* no

- 11 -

factual allegation in the complaint that would support the conclusion that it is true that Bryant-Shannon was unauthorized to possess the e-mails, except for the quoted statements by Futrell at the VEC hearing and by Vick to Edwards. But those are the very statements that are the basis of the defamation action, which Bryant-Shannon alleges Futrell and Vick *falsely* made.

The circuit court concluded that Bryant-Shannon took the e-mails wrongfully. In support of this conclusion, the circuit court noted that when Bryant-Shannon applied for unemployment benefits, the VEC "affirmed her firing as having been a proper dismissal." The circuit court thus based its conclusion that it was true that Bryant-Shannon "stole" e-mails on its findings that (1) HRCAP terminated Bryant-Shannon for taking e-mails without authorization and (2) the VEC affirmed the termination as proper.

These conclusions compound several errors. First, the complaint does not explicitly state the basis of HRCAP's termination of Bryant-Shannon. The basis could, perhaps, be reasonably inferred from Futrell's alleged statements to the VEC at the hearing on Bryant-Shannon's application for unemployment benefits. But Code § 60.2-623(B) provides that neither "[i]nformation furnished" to the VEC "nor any determination or decision rendered" in an unemployment benefits claim adjudication "shall be used in any judicial proceeding other than one arising out of [Title 60.2]," relating to unemployment compensation. In Bryant-Shannon's case against HRCAP, the Supreme Court of Virginia concluded that this provision prevented Bryant-Shannon from bringing a defamation claim based on Futrell's statements at the VEC hearing. *See Bryant-Shannon*, 299 Va. at 589-92. Although that holding is limited to the question of whether testimony at a VEC hearing can be the basis of a defamation action, the language of Code § 60.2-623(B) is a broad prohibition on the use of information furnished to the VEC or "any determination or decision rendered" in an unemployment benefit adjudication in

- 12 -

separate judicial proceedings.  Futrell's statements to the VEC therefore cannot be the basis of a factual conclusion in this case about why HRCAP fired Bryant-Shannon.[8]

But even if we could infer the basis of Bryant-Shannon's termination, the fact that Bryant-Shannon was *terminated* for taking papers home without authorization does not mean she *did* take the papers home without authorization.  We are not bound to accept Vick's and HRCAP's assertion on this lynchpin factual question without allowing Bryant-Shannon to present evidence.  But that is what the circuit court did; it accepted Vick's and HRCAP's view of the issue, rather than accepting Bryant-Shannon's allegations, as required when considering a demurrer.  This was improper.  *See Fun v. Virginia Mil. Inst.*, 245 Va. 249, 253 (1993) (holding trial court improperly sustained demurrer where, in order to find for the defendant, "the trial court had to reject [plaintiff]'s allegations, accept [defendant]'s view of the facts, and resolve the claim on the merits").

Likewise, it was improper for the circuit court to grant a demurrer based on the VEC's decision in Bryant-Shannon's unemployment benefits case. The circuit court took the VEC's decision about whether Bryant-Shannon was wrongfully terminated as dispositive of whether she took documents from HRCAP without authorization.  But, as with Futrell's testimony, the VEC's decision is not a permissible basis upon which the circuit court may base its judgment. Code § 60.2-623(B); *see Bryant-Shannon*, 299 Va. at 589-92.

Moreover, the complaint does not state the basis of the VEC's decision, nor what evidence was presented, what arguments were made, nor what questions were decided in that proceeding.  When considering a demurrer, "the trial court, and this Court upon review, are confined to the facts alleged when analyzing the pleading; no consideration properly can be

---

[8] This conclusion applies equally to the exhibit to the complaint which appears to include an excerpt from a transcript and a page of a legal brief from the VEC proceedings.

given to additional facts that may be asserted on brief or during oral argument." *Powers v. Cherin*, 249 Va. 33, 35 (1995) (quoting *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 239-40 (1989)). The basis of the VEC's decision denying Bryant-Shannon unemployment benefits is not contained in the complaint, and therefore is not a fact properly considered in a demurrer, even if considering it were allowed under Code § 60.2-623(B).[9]

The circuit court therefore based its decision on facts not contained in the complaint (impermissible to consider on demurrer) and arising from a VEC unemployment benefits hearing (impermissible for a court to consider generally). The circuit court, moreover, resolved key factual issues in this case on the merits in Vick's favor rather than accepting Bryant-Shannon's allegations as true for purposes of the demurrer. "This case is an example in which the trial court 'incorrectly . . . short-circuited litigation pretrial and . . . decided the dispute without permitting the parties to reach a trial on the merits.'" *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 139 (2013) (alterations in original) (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)). Bryant-Shannon sufficiently alleged that the statement that she "stole" e-mails was false for purposes of pleading an actionable statement upon which a defamation claim may be based.

2. The May 1, 2018 statement has defamatory "sting."

Vick also argues that the May 1, 2018 statement lacked the requisite defamatory "sting" to be actionable. The circuit court did not rule on this issue, but "[t]his Court may uphold a judgment even when the correct reasoning is not mentioned . . . by the trial court in its decision,

---

[9] Vick argues that Bryant-Shannon conceded at a September 21, 2023 hearing on the demurrer that she was terminated for taking papers home without authorization to do so. Again, the question at the demurrer stage is whether a plaintiff has sufficiently alleged a claim. A concession of a fact by a party therefore, while potentially a proper basis for a plea in bar or a motion for summary judgment, is irrelevant to a demurrer. *See, e.g.*, *Hyland*, 277 Va. at 48 (holding that a court may award summary judgment to the defendant in a defamation action on the basis that the statement is true "[o]nly if a plaintiff unequivocally has admitted the truth of an allegedly defamatory statement").

as long as the record contains sufficient information to support the proper reason." *Haynes v. Haggerty*, 291 Va. 301, 305 (2016). This principle applies in our review of a judgment sustaining a demurrer, so long as the appellee raised the argument in her demurrer, which Vick did. *See Theologis*, 76 Va. App. at 604. Therefore, we address whether the statement had the requisite defamatory sting. We conclude that it does.

Language has the requisite defamatory sting if it "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or . . . is calculated to render him infamous, odious, or ridiculous." *Schaecher*, 290 Va. at 92 (quoting *Moss v. Harwood*, 102 Va. 386, 392 (1904)). "By contrast, 'language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than "rhetorical hyperbole" is not defamatory.'" *Theologis*, 76 Va. App. at 606 (quoting *Schaecher*, 290 Va. at 92). At common law, certain aspersions are defamatory per se, including:

> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.
>
> (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society.
>
> (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.
>
> (4) Those which prejudice such person in his or her profession or trade.

*Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (2006) (quoting *Fleming v. Moore*, 221 Va. 884, 889 (1981)). Bryant-Shannon alleged that Vick's statement constituted defamation per se because it accused her of committing a crime of moral turpitude, imputed to her unfitness to

perform the duties of her office or want of integrity in the discharge of her duties, and prejudiced in her profession or trade.

Whether accusing Bryant-Shannon of stealing e-mails from her employer amounts to accusing Bryant-Shannon of committing a crime of moral turpitude involves two questions: (1) do the words accuse Bryant-Shannon of a crime, and (2) is the crime one of moral turpitude? "In determining whether or not the language does impute a criminal offense the words must be construed in the plain and popular sense in which the rest of the world would naturally understand them." *Schnupp v. Smith*, 249 Va. 353, 361 (1995) (quoting *Moss*, 102 Va. at 388). It is not necessary for the words to "make the charge in express terms." *Id.* (emphasis omitted) (quoting *Moss*, 102 Va. at 388). Rather, "[i]t is sufficient if they consist of a statement of matters which would naturally and presumably be understood by those who heard them as charging a crime." *Id.* (quoting *Moss*, 102 Va. at 388). In *Schnupp*, for example, the allegedly defamatory statement accused the plaintiff of driving a car to "a high profile drug area," and waiting while a passenger exited the vehicle, made an exchange of "something," and then returned to the vehicle. *Id.* at 359. Our Supreme Court concluded that the statement, "while not charging a criminal offense in express terms, did impute to [the plaintiff] the commission of the offense of aiding and abetting in the possession of narcotics." *Id.* at 361.

In this case, the accusation that Bryant-Shannon "stole" e-mails from her employer, when those words are "construed in the plain and popular sense in which the rest of the world would naturally understand them," clearly imputes a criminal offense to Bryant-Shannon. *Id.* (quoting *Moss*, 102 Va. at 388). The crime of "computer trespass" includes various malicious uses of computers, such as the unauthorized destruction, tampering, and removal of computer data. *See* Code § 18.2-152.4(A)(1)-(9). Specifically, Code § 18.2-152.4(A)(6) makes it "unlawful for any person, with malicious intent, or through intentionally deceptive means and without authority, to:

. . . [u]se a computer or computer network to make . . . an unauthorized copy, in any form . . . of computer data . . . ." Code § 18.2-152.4(A)(1) makes it unlawful to "[t]emporarily or permanently remove . . . any computer data . . . from a computer or computer network" without authorization.

"To discover the plain and ordinary meaning of everyday language, we consult general-purpose dictionaries." *Tomlin v. Commonwealth*, 302 Va. 356, 372 (2023). The transitive form of the verb "steal" is defined as "to take or appropriate without right or leave and with intent to keep or make use of wrongfully." *Steal*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/steal (last visited June 6, 2025). To accuse Bryant-Shannon of stealing e-mails from her employer, particularly when followed by the opinion that she should be fired for it, imputes an accusation that she committed computer trespass in violation of Code § 18.2-152.4(A)(1) or (6). Although the statement does not use the term "computer trespass," the charge need not be made "in express terms." *Schnupp*, 249 Va. at 361 (quoting *Moss*, 102 Va. at 388). The clear implication of the statement is that without authorization Bryant-Shannon either made copies of HRCAP e-mails or removed original HRCAP e-mails from HRCAP's computer system. *See, e.g.*, *Great Coastal Express v. Ellington*, 230 Va. 142, 148 (1985) (holding that employer's accusation that plaintiff had attempted to "bribe" a fellow employee to alter his truck in violation of company policy imputed an accusation that the plaintiff had committed "commercial bribery" under Title 18.2, Chapter 10).

Moreover, the imputed crime is one of moral turpitude. "In determining whether allegedly defamatory words impute a crime involving moral turpitude, so as to be actionable *per se*, the trial court must make a determination characterizing the imputed crime as a matter of law." *Id.* This decision "is similar to that which must be made to characterize misdemeanors for purposes of impeachment." *Id.*; *see* Va. R. Evid. 2:609(a)(i) ("The fact that a party in a civil case

- 17 -

or an accused who testifies has previously been convicted of . . . a misdemeanor involving moral turpitude . . . may be elicited during examination of the party or accused" to impeach the witness's credibility.). Thus, cases determining whether misdemeanors involve moral turpitude for purposes of impeachment provide guidance in determining whether a crime is one of moral turpitude for purposes of a defamation action. *See Great Coastal Express*, 230 Va. at 148 (collecting impeachment cases and using them in defamation case).

A crime of moral turpitude is one involving "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between [people]." *Id.* at 147 (quoting *Tasker v. Commonwealth*, 202 Va. 1019, 1024 (1961)). Generally, "[m]isdemeanor crimes of moral turpitude" are those which involve "lying, cheating and stealing, including making a false statement and petit larceny." *Johnson v. Commonwealth*, 41 Va. App. 37, 43 (2003) (quoting *Newton v. Commonwealth*, 29 Va. App. 433, 448 (1999)); *see Shifflett v. Commonwealth*, 289 Va. 10, 11 (2015) (listing "felonies" and "misdemeanors involving lying, cheating or stealing" as crimes of moral turpitude for purposes of the evidentiary rule relating to impeachment of witnesses).

The corollary to our conclusion that Vick implicitly accused Bryant-Shannon of violating Code § 18.2-152.4(A)(1) or (6) by accusing Bryant-Shannon of "stealing" is, of course, that by accusing Bryant-Shannon of violating Code § 18.2-152.4(A)(1) or (6), Vick accused Bryant-Shannon of committing a crime involving "stealing." Contrary to Vick's assertions, the fact that the crime at issue is labeled a "trespass," rather than a "theft" or a "larceny," does not undermine this conclusion. Again, the charge need not be made "in express terms." *Schnupp*, 249 Va. at 361 (quoting *Moss*, 102 Va. at 388). And, even in legal contexts, to "steal" is generally understood to mean "1. To take (personal property) illegally with the intent to keep it

unlawfully. 2. To take (something) by larceny, embezzlement, or false pretenses." *Steal*, *Black's Law Dictionary* (12th ed. 2024). In other words, although common law larceny is a form of stealing, stealing does not include *only* ordinary larceny. Vick accused Bryant-Shannon of taking e-mails from her employer without authorization, which is a crime involving "stealing," as that term is commonly understood. *See* Code § 18.2-152.4(A)(1), (6). Vick therefore accused Bryant-Shannon of committing a crime of moral turpitude.[10]

For substantially the same reasons, Vick's statement imputed to Bryant-Shannon "unfitness to perform the duties of [her] office or employment" and "want of integrity in the discharge of [her] duties," and prejudiced Bryant-Shannon in her profession or trade. In *Tronfeld*, the Supreme Court of Virginia concluded that "[t]o state that an attorney 'just takes people's money' and that an attorney's clients receive less for their claims because of the attorney's services implies a combination of dishonesty, incompetence or the crimes of larceny by trick or obtaining money by false pretenses." 272 Va. at 714. Such statements both "'impute[d] to [the plaintiff] the commission of some criminal offense involving moral turpitude,' and 'impute[d] to [the plaintiff] unfitness to perform the duties of . . . employment . . . or want of integrity in the discharge of the duties of such . . . employment.'" *Id.* (fifth, sixth, and seventh alteration in original) (quoting *Fleming*, 221 Va. at 889). Similarly here, accusing Bryant-Shannon of criminally stealing e-mails from her employer inherently imputes unfitness and want of integrity in the discharge of her employment and prejudices her in her profession as an executive at a nonprofit social services organization. Bryant-Shannon therefore successfully

---

[10] We do not suggest that every instance of computer trespass under Code § 18.2-152.4 involves a crime of moral turpitude. In this case, however, the alleged behavior both amounts to "stealing" as that term is commonly understood and could constitute a violation of either Code § 18.2-152.4(A)(1) or (6).

pleaded that the May 1, 2018 statement had the requisite defamatory sting to be actionable in a defamation action.[11]

   B. *Bryant-Shannon did not sufficiently allege a basis to recover punitive damages.*

To recover punitive damages in a defamation action, a plaintiff must prove the defendant made the allegedly defamatory statement with "actual malice." *Jordan*, 269 Va. at 577. A defendant acts with actual malice if she makes a defamatory statement "with knowledge that it [is] false or with reckless disregard of whether it [is] false or not." *Jackson v. Hartig*, 274 Va. 219, 228 (2007) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). A defendant makes a statement with reckless disregard for its truth if she makes it even though she "subjectively entertain[s] serious doubt as to the truth of [the] statement." *Jordan*, 269 Va. at 577 (quoting *Bose Corp. v. Consumers Union of the U. S., Inc.*, 466 U.S. 485, 511 n.30 (1984)). "Actual malice" in a defamation action must also be distinguished from "common-law malice," which is defined "as 'some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff.'" *Great Coastal Express*, 230 Va. at 149 n.3 (quoting *Preston v. Land*, 220 Va. 118, 120-21 (1979)), *overruled in part on other grounds by Cashion v. Smith*, 286 Va. 327, 338 (2013). "Common-law malice" is relevant to questions of qualified privilege. *See Preston*, 220 Va. at 120.

Bryant-Shannon failed to plausibly allege that Vick knew the May 1, 2018 statement was false or entertained serious doubt as to its veracity. Bryant-Shannon pleaded the conclusory

---

[11] This conclusion applies equally to the claim labeled "defamation per se" (Count III) and the claim labeled "defamation per quod" (Count IV) in the complaint. The terms "per se" and "per quod" refer to the proof of damages required for a defamation claim. "[I]f the published words are determined by the trial judge to be actionable per se at common law, compensatory damages for injury to reputation, humiliation, and embarrassment are presumed." *Great Coastal Express*, 230 Va. at 151. Thus, "[a] person maligned by defamation per se may recover compensatory damages for injury to reputation, humiliation, and embarrassment without demonstrating any financial loss." *Tronfeld*, 272 Va. at 713-14.

allegation that Vick made the statement "with knowledge of its falsity" but did not plead any facts demonstrating why Vick would know the statement was false. Rather, Bryant-Shannon focused on motive, alleging that Vick made the statement "with actual malice toward the Plaintiff due to Vick's sinister or corrupt motives, hatred, revenge, personal ill will, spite and desire to injure [Bryant-Shannon]." Bryant-Shannon also alleged Vick made the statement with "gross indifference and recklessness and wanton or wilful [sic] disregard of [Bryant-Shannon]'s right to personal security including in her uninterrupted entitlement to enjoyment of her good reputation in the community." But merely pleading that Vick had a *motive* to make a false statement does not alone reasonably lead to the conclusion that she *knew* the statement was false. And while the former fact may prove common-law malice, Bryant-Shannon must plausibly allege the latter to prove actual malice.

The complaint is simply lacking in facts relating to what Vick knew or did not know about Bryant-Shannon's possession of HRCAP e-mails and her authorization to possess those e-mails. The disciplinary form Vick prepared, for example, complained that Bryant-Shannon had engaged in three forms of inappropriate or unauthorized behavior, but none of the three issues related to taking work e-mails without authorization. In the chronology of the complaint, the allegation that Bryant-Shannon stole e-mails appears for the first time at the VEC hearing. There is no explanation of how Vick was related to that accusation first coming into existence.

Bryant-Shannon failed to plausibly allege that Vick made the May 1, 2018 statement knowing it was false or with reckless disregard for its truth. Bryant-Shannon thus failed to allege a basis for punitive damages. *Jordan*, 269 Va. at 577. We affirm the circuit court's decision sustaining the demurrer as to Bryant-Shannon's request for punitive damages.

III. CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed with respect to whether the May 1, 2018 statement is actionable and affirmed with respect to Bryant-Shannon's request for punitive damages. We remand the case to the circuit court for further proceedings consistent with this memorandum opinion.

*Affirmed in part, reversed in part, and remanded.*